## VIRGINIA-CAROLINA CHEMICAL CO. v. SUNDRY INS. COS.

(Circuit Court, D. South Carolina. March 22, 1901.)

**1. INSURANCE—TRANSFER OF PROPERTY.**

A policy of insurance against fire declared that the transfer of the property insured, without the consent of the insurer, would avoid the policy. When the property covered by such a policy is transferred to a third party, with the consent of the insurer, a new contract arises between the insurer and the transferee of the property, in effect the same as the issuance of a new policy.

**2. SAME—CONSTRUCTION OF POLICY.**

When a policy of insurance is issued to A., loss, if any, payable to A., or B., as interest may appear, this is a contract to insure B. as well as A. to

the full extent of his interest; and, if A. indorse on the policy a disclaimer of an interest in the property covered by the policy, B. is the only party insured under this contract, and may bring suit upon it in his own name and in his own right.

**3. SAME—REMOVAL OF CAUSES.**

An action brought by B., a Virginia corporation, under these circumstances, in the state court, against a corporation of another state, is removable into the federal court, at the instance of the defendant corporation, notwithstanding that neither the defendant corporation nor the plaintiff corporation is a resident of South Carolina.

(Syllabus by the Court.)

Mitchell & Smith, for plaintiff.
King & Spalding and Smythe, Lee & Frost, for defendants.

SIMONTON, Circuit Judge. These cases come up on a motion to remand the causes to the state court. The plaintiff, the Virginia-Carolina Chemical Company, a corporation of the state of Virginia, brought its several actions in the court of common pleas for Charleston county against 15 corporations, to wit: The Manchester Fire Assurance Company, of the United Kingdom of Great Britain and Ireland; Caledonian Insurance Company, of the United Kingdom of Great Britain and Ireland; the Liverpool & London & Globe Insurance Company, of the United Kingdom of Great Britain and Ireland; North British & Mercantile Insurance Company of London & Edinburgh, of the United Kingdom of Great Britain and Ireland; the Commercial Union Assurance Company, Limited, of London, England, a corporation of the United Kingdom of Great Britain and Ireland; Phœnix Assurance Company of London, a corporation of the United Kingdom of Great Britain and Ireland; the Lancashire Insurance Company of Manchester, England, a corporation of the United Kingdom of Great Britain and Ireland; Norwich Union Fire Insurance Society, a corporation of the United Kingdom of Great Britain and Ireland; Scottish Union & National Insurance Company of Edinburgh, a corporation of the United Kingdom of Great Britain and Ireland; the Western Assurance Company of Toronto, Canada, a corporation of the dominion of Canada; the Home Insurance Company of the City of New York, a corporation of the state of New York; Connecticut Fire Insurance Company of Hartford, Conn., a corporation of the state of Connecticut; the National Fire Insurance Company of Hartford, Conn., a corporation of the state of Connecticut; the Hartford Insurance Company, a corporation of the state of Connecticut; and the German-American Insurance Company of New York, a corporation of the state of New York,—in as many separate suits. In every case was filed a petition for removal, with bond, in the state court, praying removal on the ground of diversity of citizenship. The motion in each case was denied. Notwithstanding a copy of the record in each case was filed in this court, the causes were docketed, and now in each case a motion is made to remand the cause to the state court. The motions are based on the record as it comes from the state court, to wit, the complaint and petition

for removal. The propriety of the removal is tested by the record. The petition is a part of the record. Water Co. v. Keyes, 96 U. S. 201, 24 L. Ed. 656.

Two grounds are stated, upon one or both of which the motion to remand is urged. One is that this court, sitting in this district, cannot entertain a controversy between two corporations neither of which was created by the state of South Carolina, and so not a resident of this district; and that, if this objection can be waived, such waiver must appear either expressly on the record, or by some act, such as a general appearance, from which waiver can be presumed. This ground applies only to such of the defendants as are corporations of states of this Union other than South Carolina. The privilege of requiring suit to be brought in the district of residence inures only to such corporations. An alien corporation can be sued in any district in which valid service can be made on the defendant. In re Hohorst, 150 U. S. 661, 14 Sup. Ct. 221, 37 L. Ed. 1211; In re Louisville Underwriters, 134 U. S. 488, 10 Sup. Ct. 587, 33 L. Ed. 991. The second ground is that each of the original policies was made out to W. G. Crenshaw, Jr., and was assigned to the Virginia-Carolina Chemical Company, and so an assignee of a chose in action; that the record does not disclose whether Crenshaw is a citizen or an alien, and, if the former, of what state he is a citizen.

1. Can this court, sitting in this district, entertain a suit wholly between citizens of other states than South Carolina, neither of whom reside in this district? Unless this court can entertain such a suit originally, these cases must be remanded. Circuit courts have jurisdiction over controversies wholly between citizens of different states, or between citizens and aliens, when the amount in controversy exceeds $2,000, exclusive of interest and costs. Act 1888 (25 Stat. 433, § 1). The concluding part of the section, "but when the jurisdiction is founded on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of the plaintiff or defendant," has been uniformly held to confer a privilege on the defendant which he can waive. Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98. Nor need the waiver be in express words. It is implied unless seasonable objection be made. Martin v. Railroad Co., 151 U. S. 688, 14 Sup. Ct. 533, 38 L. Ed. 311. And so the circuit courts of the United States have held that, unless this privilege is exercised, they can entertain a controversy, notwithstanding the fact that neither the plaintiff nor defendant is resident within this district. Uhle v. Burnham (C. C.) 42 Fed. 1; Purcell v. Mortgage Co. (C. C.) 42 Fed. 465; Sherwood v. Valley Co. (C. C.) 55 Fed. 1; Cowell v. Water-Supply Co. (C. C.) 96 Fed. 769; Duncan v. Associated Press (C. C.) 81 Fed. 417.

But it is urged that in the present case the defendants have made no such waiver, expressly or by implication. The case comes here only on the petition and bond, which are silent on this point; and, as it comes here in the same plight as it left the state court, the defendants may here plead their privilege, and so defeat the juris-

diction of both courts. The supreme court of the United States in Bushnell v. Kennedy, 9 Wall. 393, meets this argument:

"It is true, as said in argument, that the section provides that after removal the cause shall proceed in the same manner as if it had been brought by original process. But we cannot recognize the validity of the inference that the defendant, before pleading in the circuit court, may move to dismiss the case for want of jurisdiction. This construction would enable the nonresident defendant in a state court to remove the suit against him into a circuit court, and then, by a simple motion to dismiss, defeat the jurisdiction of both courts. Such a construction, unless imperatively required by the plain language of the act, is wholly inadmissible, and it is clear that the language of the act does not require it. Its plain meaning is that the suit shall proceed, not that it shall proceed unless the defendant moves to dismiss. The defendant is not in court against his consent, but by his own act, and the suit is to proceed as if brought by original process, and the defendant had waived all exception to jurisdiction, and pleaded to the merits. * * * The act of defendant is something more than consent,—something more than waiver of, and objection to, the jurisdiction. It is a prayer for the privilege of resorting to federal jurisdiction, and he cannot be permitted afterwards to question it."

The same doctrine is ably presented by Curtis, J., in Sayles v. Insurance Co., 2 Curt. 212, Fed. Cas. No. 12,421, and by Johnson, Circuit Judge, in Warner v. Railroad Co., 13 Blatchf. 231, Fed. Cas. No. 17,186. See, also, De Lima v. Bidwell, 21 Sup. Ct. 743, 45 L. Ed. ——.

There is yet another standpoint from which this question can be reviewed. The removal section of the act of 1888 (25 Stat. 433, § 2), gives the right of removal by the defendant, then being nonresident of the state, in any suit of a civil nature, at law or in equity, of which the circuit courts of the United States are given jurisdiction, in section 1 of that act. This section refers only to the first part of section 1, by which jurisdiction is conferred. It has no relation to the clause of that section relating to the district in which suit may be brought. Railroad Co. v. Davidson, 157 U. S. 208, 15 Sup. Ct. 563, 39 L. Ed. 672. The right of removal is given wholly to the defendant, without any reference, in a remote degree, to the plaintiff or his wishes. So no waiver on the part of the plaintiff is necessary or proper.

2. The record shows that the plaintiff holds the policy of insurance as assignee of one Crenshaw, and the citizenship of Crenshaw nowhere appears. There can be no doubt that the act of 1887, corrected in 1888, was intended to restrict the jurisdiction of the federal courts. The supreme court and some of the circuit courts had held that a suit could be removed into the federal courts from the state courts, although such a suit could not have been brought originally in the federal court. Claflin v. Insurance Co., 110 U. S. 81, 3 Sup. Ct. 507, 28 L. Ed. 76; City of Lexington v. Butler, 14 Wall. 282, 20 L. Ed. 809; Glenn v. Walker (C. C.) 27 Fed. 578. To this the act was specially directed, and no case can be removed into the federal court from the state court of which the federal court could not have original jurisdiction. Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Railroad Co. v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672. The circuit court of the United States cannot entertain jurisdiction of a suit by an assignee, unless such suit could have been brought in the

federal court by the assignor, and that fact must appear in the record. Corbin v. Black Hawk Co., 105 U. S. 659, 26 L. Ed. 1136. The constitutionality of this restriction is discussed and sustained in Holmes v. Goldsmith, 147 U. S. 151, 13 Sup. Ct. 288, 37 L. Ed. 118.

The question, then, is, did the plaintiff in each of these cases bring his actions in the state court as assignee and because of the assignment? A policy of insurance is a chose in action. Plant Inv. Co. v. Jacksonville, T. & K. W. Ry. Co., 152 U. S. 71, 14 Sup. Ct. 483, 38 L. Ed. 358. "The contents of a contract, as a chose in action," says Corbin v. Black Hawk Co., 105 U. S. 665, 26 L. Ed. 1138, "are the rights created by it in favor of a party in whose behalf stipulations are made in it, which he has a right to enforce in a suit founded on the contract, and a suit to enforce such stipulations is a suit to recover such contents." The complaint in each case is the same precisely, varying only in name of defendants and the amounts of insurance. The action is stated to be by the Virginia-Carolina Chemical Company, a body corporate of the state of New Jersey, and against the defendant, stating its corporate character, and by what law created; that the defendant issued to W. G. Crenshaw, Jr., its policy of insurance of a certain date, thereby insuring said Crenshaw from 1st October, 1899, to 1st October, 1900, against all loss or damage by fire, except as thereinafter provided, to a certain amount, on certain buildings situate near the town of Greenville, S. C. After setting out certain conditions of the policy as to total value of the property, gross amount of insurance, and the proportionate liability of defendant, it alleges that said Crenshaw thereafter, to wit, on 20th November, 1899, in writing, assigned the policy and his interest in the property covered thereby to the plaintiff, which assignment was thereafter, in writing, duly accepted and consented to by defendant, and the loss, if any, payable thereunder, was, by the defendant, agreed to be paid to the plaintiff; that at the time of said assignment, and until the fire occurred, plaintiff had an interest in the property insured, as the owner thereof, equal to the value thereof. Then the loss is set out.

These points deserve notice as important in this discussion: First. The policy set out in the complaint is a policy of fire insurance. Second. The conditions of the policies, attached to and forming part of the complaint, that they shall be void if any change take place in the interest, title, or possession of the property insured, or if the policy be assigned before loss, unless otherwise provided by agreement, and indorsed on, or added to, the policy. Third. The promise upon which plaintiff counts is expressed in these words: "W. G. Crenshaw, Jr., on 20th November, 1899, duly, in writing, assigned said policies of insurance and his interest in the property covered thereby to the plaintiff, which assignment was thereafter, in writing, duly accepted and consented to by defendant, and the loss, if any, payable thereunder, was, by the defendant, agreed to be paid to plaintiff." Fourth. That nowhere on the policy, or in any paper attached to the policy, is there an assignment by Crenshaw to the chemical company of the policy in so many words. Fifth. That the property was destroyed by fire in June, 1900.

The defendants take this position: A fire policy, by its terms, has no further obligation when the insured ceases to have an interest in the property insured. When the insurance company assents to the transfer of the policy held by the vendor to the vendee of the property, by such assent a new contract is created between the company and the vendee, and the only use of the policy is to set out the conditions and limitations of the insurance during the unfinished term of the policy; that the relation between the former holder of the policy is not that of assignor and assignee; nor does the insurance company deal with the vendee as an assignee, but that the contract is between them as original parties.

An assignee takes the chose in action assigned subject to all the equities between the assignor and the maker of the chose; yet no one would maintain, in a case like the present, if it should appear that Crenshaw had in fact violated any of the conditions of the policy, that, the company having assented to the transfer, the plaintiff would be burdened with the result of any such violation. This precise question came up in Ellis v. Insurance Co. (C. C.) 32 Fed. 646. In a carefully considered opinion, Mr. Justice Brewer, with the concurrence of District Judges Shiras and Love, held that a party obtaining a transfer of a policy under like circumstances was not bound by any equities between the former holder of the policy and the insurer. This he held because it was a new contract between the vendee and the company, wholly unaffected by the act of the former holder. This same doctrine is held in Insurance Co. v. Munns (Ind. Sup.) 22 N. E. 78, 5 L. R. A. 430. The contract in fire insurance is one of indemnity. It is wholly personal to the insured, and has no connection with the property of the insured except so far only to fix the amount of the indemnity. If the insured parts with the property as to which he seeks indemnity, the contract necessarily is at an end; and, were he to assign the contract under these circumstances, no right of action whatever could grow out of it to his assignee. If the insurer is informed of the cessation of the interest of the assured, and its transfer to another, and thereupon accepts the transferee as the insured, this is a new contract to pay; the former insurance being only used to show the terms on which the insurance was effected. In case of loss, the insured recovers on this new contract, and not on the assignment, because the assignor, having nothing, can assign nothing. The doctrine is stated by Shaw, C. J., in Wilson v. Hill, 3 Metc. (Ky.) 69:

"If, on a transfer of an estate, the vendor assigns his policy to the purchaser, and this is made known to the insurer, and is assented to by him, it constitutes a new and original promise to the assignee to indemnify him in like manner while he retains an interest in the estate. * * * But such an undertaking will be binding, not because the policy is in any way incident to the estate or runs with the land, but in consequence of the new contract."

The same judge, in Fogg v. Insurance Co., 10 Cush. 345, says:

"In case of the sale or alienation of the insured property, the original insured having no longer any interest in the policy, except to claim a return premium, if he will assign his policy or his contract of insurance to such purchaser, and the company assent to it, here is a new and original contract, embracing all the elements of a contract of insurance between the assignee

and the insurer. The property, having become the purchaser's, is at his risk, and if burnt it is his loss, and he has a good original contract, upon a valid consideration, to guaranty him against such loss."

In Bullman v. Insurance Co., 159 Mass. 122, 34 N. E. 169, a married woman had assigned a policy of insurance to her husband. Payment of loss was resisted on the ground of the disability of the married woman. The court decided against the insurer, saying:

"It is well settled in this commonwealth that when insured property is transferred, and the policy assigned to the new owner, with the assent of the insurer, such assignee, therefore, becomes the insured, and may maintain an action in his own name. * * * A new relation is created between the insurer and the assignee, just as if the original policy was surrendered and a new one issued."

A very large number of cases is quoted from many states. The same doctrine is recognized in Hooper v. Insurance Co., 17 N. Y. 427. It is stated broadly in Insurance Co. v. Munns (Ind. Sup.) 22 N. E. 78, 5 L. R. A. 430:

"On a sale of insured property, and an assignment of the policy, duly assented to by the company, a new contract of insurance arises between the company and the assignee, which is not affected by a default of the assignor before the assignment, amounting to a forfeiture of the policy."

And the same doctrine was again maintained in Assurance Co. v. Glenn (Ind. App.) 41 N. E. 847, after a rehearing.

There is another point of view from which to consider this case. The original policy insures W. G. Crenshaw, Jr., against all direct loss or damage by fire, except as hereinafter stated, on certain described property. But upon the policy, and as part of it, is placed these words: "Loss, if any, payable to W. G. Crenshaw, Jr., or the Virginia-Carolina Chemical Company, as their interest may appear." As insurance is personal indemnity, paying a loss to the person incurring it, this provision recognizes the Virginia-Carolina Chemical Company as insured in this contract. A month and twenty days after the policy was issued this indorsement was put upon the policy, not assigning the policy, but stating the extent of the interest of the chemical company in it: "The interest of W. G. Crenshaw, Jr., as owner of the property covered by this policy, is hereby assigned to the Virginia-Carolina Chemical Company, subject to the consent of [the insurer],"—followed by this: "The [insurer] hereby consents that the interest of W. G. Crenshaw, Jr., as owner of the property covered by this policy, be assigned to the Virginia-Carolina Chemical Company." This is not, nor does it profess to be, an assignment of the policy. It fixes and establishes the interest of the plaintiff, and sustains the allegation that the defendants thereby promised to pay the plaintiff the whole loss. These indorsements evidently have reference to that part of the policy which states who are to be indemnified under it, and fix the fact that the Virginia-Carolina Chemical Company alone is insured thereunder, Crenshaw having no interest therein. So we have the promise in the original contract to pay the chemical company to the extent of its interest, and the official statement that this interest is exclusive in the whole loss which might, and which in fact did, occur.

The conclusion which has been reached is not in conflict with

Carpenter v. Insurance Co., 16 Pet. 496, 10 L. Ed. 1044. In that case Carpenter had effected a policy in the American Insurance Company, in which it was stated, "loss, if any, payable to Epenetus Reed," which policy was assigned by Carpenter to Reed. This policy was renewed in Carpenter's name, without mentioning Reed, and this was not assigned to Reed. Carpenter effected another policy in the defendant company, and no notice of the former policy was given to it, as required by the terms of the policy. In a suit upon the last-named policy, this defense was set up, and Carpenter contended that the policy in the American Company was for the sole use of Reed, and was not his. This defense was overruled. Mr. Justice Story says:

"If a mortgagor procures a policy on the property against fire, and he afterwards assign the policy to the mortgagee, with the consent of the underwriters, as collateral security, that assignment operates solely as an equitable transfer of the policy, so as to enable the mortgagee to recover the amount due in case of loss, but it does not displace the interest of the mortgagor in the premises insured. On the contrary, the insurance is still his insurance, and on his property, and for his account."

It is apparent that Reed as mortgagee, and merely in that character, can have no interest in, or right to, the policy in the American office. The insurance was not made by him, or in his name or for his account. But this is not the case before us. It may be that when a mortgagor effects insurance, "loss, if any, payable to the mortgagee," or if he assign the policy to the mortgagee as security for his debt, the mortgagor still retains an interest in the property. This is done to secure his debt, and when the loss occurs it is paid on his debt, thus relieving him, and so for his use and benefit. In the case at bar the insurance was effected by Crenshaw, loss, if any, payable to him or the chemical company, as interest may appear, and shortly after that Crenshaw, in writing, disavows all interest, declaring that this is in the chemical company. He does not transfer the policy to the chemical company. He declares that the chemical company, upon whose account, jointly with his own, the policy was effected, as interest might appear, was in fact and in deed the only party insured.

But it is said that the real question in the case is not to whom the loss under the policy must be paid; that, on this motion to remand, the only question is the proper construction and application of the federal statutes. Does plaintiff sue as assignee? And the term "assignee," as used in these statutes, applies to any one who sues under and by the devolution of interest from another. Now, how does the plaintiff in this case obtain its interest in this policy? Not by the assignment of the policy. As has been seen, there are no words assigning the policy to it. Indeed, by his own declaration Crenshaw had nothing to assign. The property, by some deeds aliunde, was conveyed to the plaintiff. But the conveyance of the property could not assign the policy. Carpenter v. Insurance Co., 16 Pet. 496, 10 L. Ed. 1044. The interest in this policy was secured to the plaintiff when it was issued. That interest did not come through, but was jointly with, Crenshaw, as interest may appear. No assignment or transfer of the policy was necessary to enable plaintiff to recover; it being well settled that a policy effected by S., for account of whom

it may concern, or with other equivalent terms, will inure for the benefit of the party for whom it was intended. Sturm v. Boker, 150 U. S. 333, 14 Sup. Ct. 99, 37 L. Ed. 1093; Hooper v. Robinson, 98 U. S. 528, 25 L. Ed. 219. The weight of authority is that a party may sue in his own name on a promise made to another on sufficient consideration for his use and benefit. Peck v. Insurance Co. (Utah) 51 Pac. 255. And in Massachusetts it is held that when a mortgage debt exceeds the loss, which is payable to the mortgagee as interest may appear, the mortgagee may recover the whole in his own name. When the loss exceeds the debt the mortgagor and mortgagee may unite as plaintiffs, or each may sue for his own share, unless, by the terms of the policy, the whole loss is payable to the mortgagee. Palmer Sav. Bank v. Insurance Co. of North America (Mass.) 44 N. E. 211, 32 L. R. A. 615. This being so, the sole question in the case is, what is the interest of the plaintiff? The answer is that by the declaration of Crenshaw, assented to and confirmed by the defendant, its interest is in the entire loss; this not because of any assignment, but because it is the sole owner of the property, and the only one to be indemnified for its loss. Its recovery, therefore, is dependent on the very terms of the policy, because of the original policy, and by these alone. This is the contract; the declaration of Crenshaw is only evidence under the contract. The complaint recognizes this. After setting out the transaction by Crenshaw, and the recognition of it by the defendant,—erroneously, as has been seen, called an "assignment,"—it sets out the only promise alleged in the complaint, "Thereupon the defendant promised to pay the whole loss to the plaintiff." The case at bar bears no resemblance to Glass v. Police Jury, 176 U. S. 209, 20 Sup. Ct. 346, 44 L. Ed. 436, quoted by the learned counsel for this motion; for in that case the action was brought upon certain warrants issued to the order of a citizen of Louisiana in the hands of a citizen of Missouri, who bought them at a judicial sale, and sued a corporation of the state of Louisiana on them. The only point decided was that the mode of acquisition did not affect the rule. The case of Plant Inv. Co. v. Jacksonville, T. & K. W. Ry. Co., 152 U. S. 71, 14 Sup. Ct. 485, 38 L. Ed. 360, also quoted by counsel, was one in which an assignee of an interest in realty brought the action. The court in this case say: "The term 'assignee' in the statute covers, not merely persons to whom is technically transferred the contract in controversy, but any one who, by virtue of any transfer to him, can obtain the beneficial interest." In this case before us, Crenshaw declares in writing that he has transferred certain property covered by the policy to the plaintiff. This was not a transfer of the policy; for the policy was not attached to the realty, or in any manner could it go with the same, as an incident thereto, by any conveyance or assignment. Carpenter v. Insurance Co., supra. Nor could the plaintiff have set up the policy, or claimed loss thereunder, had it not already been a party for whose benefit the policy was intended. It was not the purpose of this declaration by Crenshaw to assign or devolve his interest in the policy to the plaintiff; but one of the conditions of the policy was that if Crenshaw conveyed away his interest to any person, without the consent of the company, the whole policy would

be void. To escape this, he gave notice to the company that he had conveyed away his interest under the policy to the plaintiff. The company assented to this, and the avoidance of the policy was prevented. But this gave no new right to the plaintiff. It was already protected to the extent of its interest, and this only declared what the extent of its interest is.

It is said, also, that the question is, can the action which was begun in the state court be removed into this court? That it may be that the plaintiff could have brought his action in a different character and form, but that it has selected to bring it in its character as assignee and upon the assignment. So the action in that form cannot be removed.

In code pleading, the complaint confines itself to the facts of the case. The court draws all conclusions of law established by them. In the present case, the complaint, with its exhibit, showed that the original policy was taken out in the name of Crenshaw, for the joint indemnity of himself and of the Virginia-Carolina Chemical Company, as interest may appear. It discloses that at that time Crenshaw, perhaps, may have had some interest, was owner in whole or in part of the property covered by the insurance, and so might have been entitled to indemnity against the risks insured. But a short time afterwards, by indorsement on the policy, Crenshaw disclaimed all interest in the property, and declared that the chemical company was wholly interested therein, by reason of which he ceased to have any further interest in the policy, and his right to indemnity did not exist. Thenceforward the only person remaining insured was the chemical company. And this is distinctly recognized by the insurer, and thereupon the insurer promised to pay the whole indemnity, in case of loss, to the chemical company. The conclusion of law drawn from these facts is that the chemical company had a policy of insurance inuring wholly to it, with a promise made to it alone to pay it the whole indemnity, which promise is the cause of action. Calling it an assignment of the previous contract does not make it so, in face of the authorities quoted. I am of the opinion that the action is upon the promise by the defendant to pay the plaintiff the loss it suffered; that this is an original promise under a policy of insurance; that the assignment by Crenshaw, if any such assignment of the policies was made, carries nothing, for, not being in a position to suffer loss, he could not secure indemnity from loss to the chemical company; that the action, therefore, is not by an assignee, as such, but by an original contractor, dealing directly with the defendant; and that the case does not come within the exceptions of the removal statute. The motion to remand is refused in each case.