# MEXICAN NATIONAL RAILROAD COMPANY *v.* DAVIDSON.

# DAVIDSON *v.* MEXICAN NATIONAL RAILROAD COMPANY.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 880, 876. — Submitted February 4, 1895. — Decided March 18, 1895.

Under § 2 of the act of March 3, 1887, c. 373, 24 Stat. 552, as corrected by the act of August 13, 1888, c. 866, 25 Stat. 433, the jurisdiction of a Circuit Court of the United States, on removal by the defendant of an action from a state court, is limited to such suits as might have been brought in that court under the first section.

A question of jurisdiction cannot be waived.

THE Mexican National Construction Company, a citizen of Colorado, assigned certain causes of action against the Mex-

ican National Railroad Company, also a citizen of Colorado, to Davidson, a citizen of New York, September 11, 1891, and, on the same day, Davidson began his action of attachment in the Supreme Court of the State of New York, against the railroad company, which in due season. removed the cause into the United States Circuit Court for the Eastern District of New York. Davidson, the plaintiff, recovered judgment for $151,832.41, upon a trial before the court without a jury. From this judgment the railroad company sued out its writ of error to the Circuit Court of Appeals of the United States for the Second Circuit, and Davidson also sued out a writ of error on the ground that he should have had judgment for a larger amount.

The Circuit Court of Appeals certified to this court in each case the following questions:

"First. Whether or not the United States Circuit Court of the Eastern District of New York had jurisdiction to hear and determine the first cause of action.

"Second. Whether or not the United States Circuit Court of the Eastern District of New York had jurisdiction to hear and determine the second cause of action."

These questions were preceded by a statement of facts by that court setting forth, among other things, that plaintiff sought to recover upon two causes of action:

"1st. To recover, with interest from the 15th of October, 1886, the amount of a debt owing the construction company by the Mexican National Railroad Company on the 15th October, 1886, which the defendant, in consideration of the transfer to it of certain railroad property, agreed to pay with other-debts up to the extent of a certain fund which was put into its hands and which was sufficient in amount for that purpose. The other debts had been fully paid before suit brought.

"2d. To recover $1731, damages sustained by the construction company (being its payment of the reasonable fees of an umpire and stenographer) through the breach by the defendant of an agreement between it and the construction company to adjust by arbitration the controversy over the claim first mentioned."

And that among the assignments of error duly filed in that court by the Mexican National Railroad Company were these : "That the court upon the trial entertained jurisdiction of this cause. That the court upon the trial entertained jurisdiction of the first alleged cause of action set forth in the complaint. That the court upon the trial entertained jurisdiction of the second alleged cause of action set forth in the complaint." But that the record showed that no question as to the jurisdiction of the Circuit Court was raised upon the trial, and no such question was referred to in the findings or opinion of the Circuit Court.

The portions of sections one and two of the act of March 3, 1887, c. 373, 24 Stat. 552, as corrected by the act of August 13, 1888, c. 866, 25 Stat. 433, defining the jurisdiction of District and Circuit Courts of the United States, bearing upon the questions involved, are as follows :

"Sec. 1. That the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, . . . in which there shall be a controversy between citizens of different States, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid, . . . and no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant; nor shall any Circuit or District Court have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made; . . .

"Sec. 2. . . . Any other suit of a civil nature, at law

or in equity, of which the Circuit Courts of the United States are given jurisdiction by the preceding section, and which are now pending, or which may hereafter be brought, in any state court, may be removed into the Circuit Court of the United States for the proper district by the defendant or defendants therein, being non-residents of that State. . . ."

*Mr. Treadwell Cleveland* for the railroad company.

*Mr. Frederic D. McKenney* and *Mr. Edward M. Shepard* for Davidson.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

This action was based as to its first cause upon an alleged indebtedness of $104,244.10 existing October 1, 1886, in favor of the construction company and against the railway company, with interest. The obligation to pay the indebtedness devolved upon the railroad company by reason of an agreement, annexed to the complaint, between the persons to whom the construction company had disposed of the first mortgage bonds of the railroad company and the construction company. This agreement provided for the foreclosure of the mortgage upon the property of the railway company and the formation of a new railroad company under the laws of Colorado; the conveyance of the property bid in at foreclosure sale to the new company; the issue of new first mortgage bonds by the latter company; the sale of these to a certain amount and from the proceeds of such sale the deposit with the new railroad company of a sum not exceeding $217,000 to be applied to liquidate the indebtedness of the railway company. The complaint set forth the agreement and the proceedings thereunder resulting in the deposit of the sum of $217,000, and alleged that of that sum " there remains to liquidate the indebtedness of the railway company " a sum exceeding that for which the complaint demanded judgment. The issue on the merits was therefore whether the construction company was entitled to recover this

claim against the railroad company out of the fund of $217,000. Was the action brought, as to its first cause, " to recover the contents of a chose in action," and could it have been originally brought in the Circuit Court of the United States? If not, could the jurisdiction be sustained on removal?

The language of section 11 of the judiciary act of 1789, c. 20, was as follows: " Nor shall any District or Circuit Court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of.an assignee, unless a suit might have .been prosecuted in such court to recover the said contents if no assignment had been made." 1 Stat. 78.

In *Serè* v. *Pitot*, 6 Cranch, 332, 335, an action was commenced in the District Court.for the District of New Orleans to foreclose a mortgage given by a citizen of Louisiana to another citizen of.the same State. The plaintiff was the general assignee in insolvency of the mortgagor and was an alien, and Chief Justice Marshall delivering the opinion of the court said: " Without doubt, assignable paper, being the chose in action most usually transferred, was in the mind of the legislature when the law was framed; and the words of the provision are therefore best adapted to that class of assignments. But there is no reason to believe that the legislature were not equally disposed to except from the jurisdiction of the Federal courts those who could sue in virtue of equitable assignments, and those who could sue in virtue of legal assignments. The assignee of all the open accounts of a merchant might, under certain circumstances, be permitted to sue in equity, in his own name, and there would be as much reason to exclude him from the Federal courts, as to exclude the same person, when the assignee of a particular note. The term 'other chose in action' is broad enough to comprehend either case; and the word 'contents' is too ambiguous in its import to restrain that general term. The contents. of a note are the sum it shows to be due; and the same may, without much violence to language, be said of an account."

In *Sheldon* v. *Sill*, 8 How. 441, 449, a bill in equity had been filed in the Circuit Court of the United States by the

assignee of a bond and mortgage for a decree of sale of the mortgaged premises. The mortgagor and mortgagee were both citizens of Michigan and the assignee was a citizen of New York. It was held that the court had no jurisdiction, Mr. Justice Grier saying: "The term 'chose in action' is one of comprehensive import. It includes the infinite variety of contracts, covenants, and promises, which confer on one party a right to recover a personal chattel or a sum of money from another, by action."

In *Corbin* v. *County of Blackhawk*, 105 U. S. 659, it was decided that a suit to compel the specific performance of a contract or to enforce its other stipulations was a suit to recover the contents of a chose in action, and not maintainable under section 11 of the act of 1789, as reënacted in section 629 of the Revised Statutes, in the Circuit Court by an assignee if it could not have been prosecuted by the assignor had no assignment been made. And this was reaffirmed in *Shoecraft* v. *Bloxham*, 124 U. S. 730. But while the exception extended to all actions *ex contractu*, it has been held not applicable to a tortious taking or wrongful detention of a chose in action against the right or title of· the assignee where the injury is one to the right of property in the thing and the derivation of title unimportant. *Deshler* v. *Dodge*, 16 How. 622, 631; *Ambler* v. *Eppinger*, 137 U. S. 480

In the acts of March 3, 1887, c. 373, 24 Stat. 552, and August 13, 1888, c. 866, 25 Stat. 433, the provision is couched in these words: "Nor shall any Circuit or District Court have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made." The act of 1875 referred to suits "founded on contract," but the act of 1887 restored the words of the act of 1789, " to recover the contents of any promissory note or other chose in action," and we do not think that the words, "if such instrument be payable to bearer and be not

made by any corporation," limit the comprehensiveness of "chose in action," as construed under the act of 1789; and as this cause of action is based on contract we are of opinion that it is within the definition heretofore ascribed to the words "to recover the contents of a chose in action." This being so, it follows that the action could not have originally been brought in the Circuit Court of the United States by Davidson, the assignee of a Colorado corporation, against a Colorado corporation.

We inquire then whether the first cause of action was one of which a Circuit Court of the United States could take cognizance through removal from a state court.

By the 12th section of the judiciary act of 1789 it was provided: "That if a suit be commenced in any state court against an alien, or by a citizen of the State in which the suit is brought against a citizen of another State, . . . and the defendant shall, at the time of entering his appearance in such state court, file a petition for the removal of the cause for trial into the next Circuit Court, . . . it shall then be the duty of the state court to accept the surety, and proceed no further in the cause, . . . and the cause shall there proceed in the same manner as if it had been brought there by original process." And it was held in *Green* v. *Custard,* 23 How. 484, and *Bushnell* v. *Kennedy,* 9 Wall. 387, that the restriction of the original jurisdiction of the Circuit Courts in respect of suits by an assignee, whose assignor could not be sued in that court, did not apply to a suit removed from a state court under the 12th section.

By the second section of the act of March 3, 1875, c. 137, 18 Stat. 470, the exception out of the original jurisdiction as to assignees of choses in action occupied the same relative position as in the act of 1789, and the same conclusion was reached in regard to it, namely, that the restriction upon the commencement of suits contained in section 1 did not apply to the removal of suits under section 2. *Claflin* v. *Commonwealth Insurance Co.,* 110 U. S. 81; *Delaware County* v. *Diebold Safe Co.,* 133 U. S. 473. And see *Goldey* v. *Morning News,* 156 U. S. 518.

But the second section of the act of 1887 (as corrected in 1888) contained a radical difference from section 12 of the act of 1789 and section 2 of the act of 1875 in confining the suits which might be removed to those "of which the Circuit Courts of the United States are given original jurisdiction by the preceding section." As already stated, the last part of the preceding section provides that no Circuit or District Court shall have cognizance to recover the contents of a chose in action in favor of an assignee, unless such suit might have been prosecuted therein to recover such contents if no assignment had been made, while the second section provides for the removal of suits now pending, or which may be hereafter brought in any state court, of which the Circuit Courts of the United States were given jurisdiction by the first section. This change was made in accordance with that intention to restrict the jurisdiction of the Circuit Courts, which has been so often recognized by this court. *Smith* v. *Lyon*, 133 U. S. 315, 319 ; *In re Pennsylvania Company*, 137 U. S. 451, 454 ; *Fisk* v. *Henarie*, 142 U. S. 459, 467 ; *Shaw* v. *Quincy Mining Company*, 145 U. S. 444 ; *Hanrick* v. *Hanrick*, 153 U. S. 192.

We must hold, therefore, as has indeed already been ruled, *Tennessee* v. *Union & Planters' Bank*, 152 U. S. 454, 461, that the jurisdiction of the Circuit Courts on removal by the defendant, under this section, is limited to such suits as might have been brought in that court by the plaintiff under the first section. The question is a question of jurisdiction as such and cannot be waived. *Capron* v. *Van Noorden*, 2 Cranch, 126 ; *Mansfield Railway Co.* v. *Swan*, 111 U. S. 379 ; *Metcalf* v. *Watertown*, 128 U. S. 586. It is true that by the first section, where the jurisdiction is founded on diversity of citizenship, suit is to be brought "only in the district of the residence of the plaintiff or the defendant," and this restriction is a personal privilege of the defendant, and may be waived by him. *St. Louis & San Francisco Railway* v. *McBride*, 141 U. S. 127. Section two, however, refers to the first part of section one by which jurisdiction is conferred, and not to the clause relating to the district in which suit may be brought. *McCormick Machine Co.* v. *Walthers*, 134 U. S. 41.

As to the second cause of action, the sum sued for was under the jurisdictional amount.

*The result is that, in each case, both questions certified must be answered in the negative.*